IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

|  |  |
|---|---|
| JOSHUA CACHO,<br><br>Plaintiff,<br><br>v.<br><br>CHW GROUP INC, d/b/a CHOICE HOME CHOICE HOME WARRANTY, a New Jersey Corporation<br><br>Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

6:23-cv-177-CEM-LHP

2023 JAN 31 PM 3:36
US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

FILED

## PLAINTIFF'S ORIGINAL COMPLAINT

### PARTIES

1.      The Plaintiff is JOSHUA CACHO ("Plaintiff") a natural person, resident of the Middle

District of Florida, and was present in Florida for all calls, in this case in Seminole County,

Florida.

2.      Defendant CHW GROUP INC, d/b/a CHOICE HOME WARRANTY ("CHW") is a

Limited Liability Company organized and existing under the laws of New Jersey with its

principal address at 2147 State Route 27 4th Floor Edison, New Jersey 08817, United States, and

can be served via registered agent Mandalawi, Victor at 2147 Route 27 South Suite 400 Edison,

New Jersey 08817, United States.

3.      Defendant CHW GROUP INC, d/b/a CHOICE HOME WARRANTY,  is hereinafter

known as "Defendant" and/or "CHW"

### JURISDICTION AND VENUE

4.      This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims

1

pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

## PERSONAL JURISDICTION

5.     This Court has general personal jurisdiction over the defendant because they have repeatedly placed calls to Florida residents, and derive revenue from Florida residents, and they sell goods and services to Florida residents, including the Plaintiff.

## VENUE

6.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the calls and sale of goods and services directed at Florida residents, including the Plaintiff—occurred in this District and because the Plaintiff resides in this District.

7.     This Court has venue over Defendant CHW because the calls at issue were sent on behalf of Defendant CHW at the authorization of Defendant CHW to the Plaintiff, a Florida resident.

## THE TELEPHONE CONSUMER PROTECTION ACT
### OF 1991, 47 U.S.C. § 227

8.     In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*. Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

9.    The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

10.    The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

11.    The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

12.    Separately, the TCPA bans telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

13.    The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated there under. 47 U.S.C. § 227(c)(5).

14.    According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

15.    The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing*

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

*the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

16.     The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines.  In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer:  (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

17.     *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

18.     The FCC confirmed this principle in 2013, when it explained that "a seller ... may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

19.     Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

4

20.     The TCPA defines an ATDS as "equipment which has the capacity – (A) to store or produce telephone numbers to be called, using a random or sequential umber generator; and (B) to dial such numbers. *Id.* at § 227(a)(1)

21.     As to what type of dialing equipment constitutes an ATDS, the TCPA vests to the Federal Communication Commission ("FCC") the responsibility to promulgate regulations implementing the TCPA's requirements. *Id.* at § 227(a)(1).

22.     Over the last nineteen years, the FCC has repeatedly recognized that a predictive dialer is an ATDS that is subject to regulation by the TCPA. In its 2003 Order, the FCC also defined a "predictive dialer" holding:

[A] predictive dialer is equipment that dials numbers and, when certain computer software is attached, also assists telemarketers in predicting when a sales agent will be available to take calls. The hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers. As commenters point out, in most cases, telemarketers program the numbers to be called into the equipment, and the dialer calls them at a rate to ensure that when a consumer answers the phone, a sales person is available to take the call.[1]

23.     In 2008, the FCC affirmed "that a predictive dialer constitutes an automatic telephone dialing system and is subject to the TCPA's restrictions on the use of autodialers."[2]

24.     A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g., Jackson Five Star Catering, Inc. v. Beason,* Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal

quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

## FLORIDA STATUTES § 501.059

25.　Florida Statutes § 501.059 makes it a violation to "make or knowingly allow a telephone sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

26.　A "telephone sales call" is defined as a 'telephone call, text message, voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(j).

27.　"Prior express written consent" means an agreement in writing that: Fla. Stat. § 501.0059(g).

　　1.　Bears the signature of the called party;

　　2.　Clearly authorizes the person making or allowing the placement of a telephonic sales calls by telephone call, text message, or voicemail transmission to deliver or cause to be delivered to the called party a telephone sales call using an automated system for the selection or dialing of telephone numbers, the playing of a recorded message when a connection is completed to a number called, or the transmission of a prerecorded voicemail;

　　3.　Includes the telephone number to which the signatory authorizes a telephonic sales

call to be delivered; and

   4. Includes a clear and conspicuous disclosure informing the called party that;

      a. By executing the agreement, the called party authorizes the person making or allowing the placement of a telephonic sales call to deliver or cause to be delivered a telephonic sales call to the called party using an automated system for the selection or dialing of telephone numbers or playing of a recorded message when a connection is completed to a number called; and

      b. He or she is not required to directly or indirectly sign the written agreement or to agree to enter into such agreement as a condition of purchasing any property, goods, or services.

**28.** A person aggrieved by a violation of this section may bring an action to recover actual damages or $500, whichever is greater. Fla. Stat. § 501.059(10)(a)(2).

**29.** If the court finds that the defendant willfully or knowingly violated this section or rules adopted pursuant to this section, the court may, in its discretion, increase the amount of the award to an amount equal to not more than three times the amount available under paragraph (a). Fla. Stat. § 501.059(10)(a)(2)(b).

## FLORIDA TELEMARKETING ACT

**30.** A commercial telephone seller or salesperson making a commercial telephone solicitation call may not use technology that deliberately displays a different caller identification number than the number the call is originating from to conceal the true identity of the caller. Fla. Stat. § 501.616(7)(b).

**31.** A commercial telephone seller or salesperson may not transmit more than three commercial telephone solicitation phone calls from any number to a person over a 24-hour

7

period on the same subject matter or issue, regardless of the phone number used to make the call. Fla. Stat. § 501.616(6)(b).

32.     In addition to any other penalties or remedies provided under law, a person who is injured by a violation of the provisions of this part may bring a civil action for recovery of actual damages and/or punitive damages, including costs, court costs, and attorney's fees.  No provision of this part shall be construed to limit any right or remedy provided under law.  Fla. Stat. § 501.625.

## FACTUAL ALLEGATIONS

33.     Plaintiff's personal cell phones (407) 577-3881, and (407) 577-3823 have both been registered on the National Do-Not-Call Registry for more than thirty-one (31) days prior to the first call received from Defendant CHW.

34.     Plaintiff personally registered both the cell phones at issue in this case on the National-Do-Not-Call Registry.

35.     Plaintiff never asked the National Do-Not-Call Registry administrator to remove him from the National Do-Not-Call Registry and Plaintiff was on the National Do-Not-Call Registry at all times relevant to this Complaint.

36.     Defendant CHW operates as a home warranty service provider. *See Exhibit A.*

37.     Defendant CHW owns and operates the website https://www.choicehomewarranty.com.

38.     As part of its marketing Defendant CHW hires and authorizes telemarketers to make unauthorized phone calls to consumers *en masse* using a predictive dialer, which is a form of an automatic telephone dialing system ("ATDS"), (which is equipment which has the capacity – (A) to store or produce telephone numbers to be called, using a random or sequential umber

generator; and (B) to dial such numbers) to solicit home warranty policies on behalf of Defendant CHW.

**39.**     Defendant CHW entered into contracts authorizing telemarketers to solicit on their behalf.

**40.**     Defendant CHW pays the telemarketers out of bank accounts they own and control.

**41.**     Defendant CHW approves of the ATDS used, and the scripts their telemarketers use when making calls. Defendant CHW is well aware the telemarketers they hire to solicit on their behalf are violating TCPA along with Florida Statute § 501.059 among others by making unauthorized phone calls to consumers using an ATDS.

**42.**     Defendant CHW has been sued fifty (50) times since 2011 for violating TCPA, Florida Statute § 501.059, grievances against the company, along with fraud and other reasons, examples of these lawsuits but not limited to are, *ZONONI v. CHW GROUP, INC, No. 2:2022cv14358 (S.D.FL. Oct. 20, 2022), Katz v. CHW Group, Inc. No. 5:22cv05198 (W.D. AR. Sep. 27, 2022), Nichols v. CHW Group, Inc., No.8:19cv00132 (D. MD. Jan. 14, 2019), Cook v. CHW Group, Inc. No. 1:18cv01071 (W.D.TX. Dec. 11, 2018), Griffin v. CHW Group, Inc. No. 1:2019cv05561 (N.D.GA. Dec. 10, 2019)* and continues their illegal behavior because violating the TCPA and FL Statute § 501.059 benefits them financially.

**43.**     Each and every time Defendant CHW coerces a consumer into getting a home warrant policy it benefits CHW financially.

**44.**     The Plaintiff has been harassed with predictive dialer calls from telemarketers calling on behalf of Defendants CHW for over three months.

**45.**     Plaintiff received at least seven (7) unauthorized phone calls to his personal cell phone from telemarketers calling on behalf of Defendant CHW using an predictive dialer which is an

ATDS , and one (1) unauthorized direct phone call from Defendant CHW's telemarketer within a three-month period ("the calls"). The calls Plaintiff received from or on behalf of Defendant CHW solicited Plaintiff for home warranty services.

46.      With information and belief, Plaintiff has received more phone calls from, or on behalf of Defendant CHW within the past two years.  These calls are currently unknown to Plaintiff but will be revealed during discovery

47.      **Calls #1-6** *See Table A,* Plaintiff received a series of predictive dialer calls that all started the same. Plaintiff would answer the phone with "hello", or "hey" and would hear nothing. Plaintiff would then say "hello" several times loudly and would then hear a loud audible beep, after a few seconds a telemarketer calling on behalf of Defendant CHW would get on the line and state:

> **"Hello? My name is "_____" calling from Home Warranty Service how are you? I'm calling in regards to the home warranty plan, which is going to cover all the major and minor repairs on home appliances, in case anything breaks down…"**

48.      On **Calls # 1-6,** *See Table A*, on each and every call, after answering "hello" and hearing it was Defendant's telemarketers calling in regards to "home warranty" services, Plaintiff clearly told Defendant's telemarketer he was not interested and on the do not call list, and to please stop calling.

49.      **Call #7** *See Table A*, on November 28, 2023, at 5:27 PM Plaintiff received a phone call to his personal cell phone from a telemarketer calling on behalf of Defendant CHW from phone number (828) 382-9404.

50.      Plaintiff answered "hello" but heard nothing. Plaintiff repeated loudly "hello" several times and eventually heard a loud audible beep, and after several second a representative got on the line.

10

51.     Defendant CHW's telemarketer answered by saying **"Hello this Shawn Adams calling you from Home Warranty Services how are you doing today? Im calling in regards to the home warranty plan, which is going to cover all the appliances and major operating systems in case anything breaks down."**

52.     Through information and belief, "Home Warranty Services" is a fictional name designed to avoid liability under the TCPA.

53.     Plaintiff was extremely aggravated as this was now months of receiving the same calls. Therefore, for the sole purpose of identifying the responsible party, Plaintiff went along with the telemarketer and answered his questions.

54.     Defendant CHW trains their telemarketers to use fictional names when referring to the company for the purpose of ducking TCPA accountability.

55.     Defendant CHW's telemarketer then asked Plaintiff his first and last name, further demonstrating this was a random automated call and Defendant CHW's telemarketer did not have Plaintiff's information.

56.     Defendant CHW's telemarketer also asked Plaintiff if he had a debit or major credit card.

57.     After answering Defendants CHW's telemarketer he was then transferred to "Richard" from "Choice Home Warranty"

58.     Defendant CHW telemarketer Richard then went over the details of the "policy".

59.     Defendant CHW's telemarketer then told Plaintiff the website to the company was www.choicehomewarranty.com.

60.     Towards end of the call Plaintiff asked Defendant CHW's telemarketer if the call was recorded. Richard's reply was "all of our calls are recorded and monitored for training and security".

**61.**     On November 28, 2022 Plaintiff received an email from Defendant CHW's telemarketer from email address rtaylor@choicehomewarranty.com. *See Exhibit B.*

**62.**     After doing research Plaintiff learned through the "Better Business Bureau" that Defendant CHW has over 10,700 complaints, and a Consumer Fraud lawsuit from the Attorney General of Arizona, Mr. Mark Brnovich that was filed against them on Oct. 02, 2019. *See Exhibit C.*

**63.**     Table A below displays the calls Plaintiff received from Defendant CHW.

TABLE A

| No. | Date | Time | Caller ID | Notes |
|---|---|---|---|---|
| 1 | Oct 19, 2022 | 3:19 PM | (970) 423-2407 | Automated call from Michael Stevens at "Home Warranty Services" |
| 2 | Nov 01, 2022 | 3:25 PM | (407) 780-9810 | Automated call from Alex Rogers at "Home Warranty Services" |
| 3 | Nov 09, 2022 | 1:21 PM | (407) 867-5385 | Automated call from Brian Roberts at "Home Warranty Services" |
| 4 | Nov 17, 2022 | 6:22 PM | (407) 568-9539 | Automated call from James at "Home Warranty Services" |
| 5 | Nov 21, 2022 | 10:56 AM | (689) 256-7593 | Automated call from Michael at "Home Warranty Services" |
| 6 | Nov 28, 2022 | 5:27 PM | (828) 382-9404 | Automated call from Shawn Adams at "Home Warranty Services" |
| 7 | Dec 16, 2022 | 3:26 PM | (407) 525-7150 | Automated call from Marvin at "Home Warranty Services" |
| 8 | Jan 11, 2023 | 9:13 AM | (443) 252-8612 | Voicemail left by Derrick Roaders from "Choice Home Warranty" |

**64.**     Plaintiff sent an internal do-not-call policy request to Defendant CHW to email Plaintiff sent an internal do-not-call policy request to Defendant CHW to email info@homewarrantyadministrators.com, which is an email listed in the user agreement link on the website www.choicehomewarranty.com which is owned and operated by Defendant CHW www.choicehomewarranty.com.

12

65.     Plaintiff received an email response from info@homewarrantyadministrators.com with Defendant CHW's internal do not call policy attached. *See Exhibit D.*

66.     Upon information and belief Defendant CHW did not train their agents who engaged in telemarketing on the existence and use of Defendant CHW's internal do not call policy as they failed to recognize Plaintiff's personal cell phone is registered on the National Do-Not-Call Registry.

67.     Plaintiff has limited data storage capacity on his cellular telephone. Incoming calls consumed part of this capacity.

68.     No emergency necessitated these calls.

### VICARIOUS LIABILITY OF DEFENDANT CHW

69.     Defendant is vicariously liable for the telemarketing calls that generated the leads on their behalf.

70.     The FCC is tasked with promulgating rules and orders related to the enforcement of the TCPA. 47 U.S.C. § 227(b)(2).

71.     The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

72.     The FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 FCC Rcd. 559, 565 ¶ 10 (2008) (recognizing "on behalf of" liability in the context of an autodialed or prerecorded message calls sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

13

73.     The FCC confirmed this principle in a declaratory ruling holding that sellers such as Post

may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its
> telemarketing activities to unsupervised third parties would leave
> consumers in many cases without an effective remedy for telemarketing
> intrusions. This would particularly be so if the telemarketers were
> judgment proof, unidentifiable, or located outside the United States, as is
> often the case. Even where third-party telemarketers are identifiable,
> solvent, and amenable to judgment limiting liability to the telemarketer
> that physically places the call would make enforcement in many cases
> substantially more expensive and less efficient, since consumers (or law
> enforcement agencies) would be required to sue each marketer separately
> in order to obtain effective relief. As the FTC noted, because sellers may
> have thousands of independent marketers, suing one or a few of them is
> unlikely to make a substantive difference for consumer privacy.

*In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (footnote omitted)

(alteration marks and internal quotation marks omitted).

74.     More specifically, *Dish* held that, even in the absence of evidence of a formal contractual

relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the

telemarketer "has apparent (if not actual) authority" to make the calls. *Id.* at 6586 ¶ 34.

75.     The ruling rejected a narrow view of TCPA liability, including the assertion that a seller's

liability requires a finding of formal agency and immediate direction and control over the third-

party who placed the telemarketing call. *Id.* at 6587 ¶ 36 & n.107.

76.     To the contrary, the FCC—armed with extensive data about robocalls and Americans'

complaints about them—determined that vicarious liability is essential to serve the TCPA's

remedial purpose of protecting Americans from "unwanted telemarketing invasions." *Id.* at 6587

¶ 36.

77.     Vicarious liability is important because reputable, traceable, and solvent companies that benefit from illegal telemarketing are "in the best position to monitor and police TCPA compliance by third-party telemarketers." *Id.* at 6588 ¶ 37.

78.     Defendants are legally responsible for ensuring that the affiliates that make telemarketing calls on its behalf comply with the TCPA when so doing.

79.     Defendants knowingly and actively attempted to accept business that originated through illegal telemarketing.

80.     Defendants knew (or reasonably should have known) that their telemarketers were violating the TCPA on their behalf but failed to take effective steps within their power to force the telemarketers to cease that conduct.

81.     By hiring a company to make calls on their behalf, Defendants "manifest[ed] assent to another person . . . that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency ("Restatement").

82.     Moreover, Defendants maintained interim control over the actions of their telemarketers.

83.     For example, Defendants had absolute control over whether, and under what circumstances, they would accept a customer from their telemarketers.

84.     Furthermore, Defendant had day-to-day control over the actions of its telemarketers, including the ability to prohibit them from using an ATDS to contact potential customers of Defendant and the ability to require them to respect the National Do Not Call Registry.

85.     Defendant also gave interim instructions to their telemarketers by providing lead-qualifying instructions and lead volume limits.

86.     Defendant donned their telemarketers with apparent authority to make the calls at issue. Thus, the telemarketers pitched "home warranty" policies in the abstract.

15

87.     Apparent authority turns on whether a third party believes the principal authorized its agent to act and the belief is "traceable" to a manifestation of the principal. Restatement § 2.03 cmt. c.

88.     "[A]pparent authority can arise in multiple ways and does *not* require that 'a principal's manifestation must be directed to a specific third party in a communication made directly to that person.'" *Dish*, 28 FCC Rcd. at 6586 ¶ 34 n.102 (quoting Restatement § 2.03 cmt. c).

89.     A principal may make a manifestation "by directing an agent to make statements to third parties or directing or designating an agent to perform acts or conduct negotiations, placing an agent in a position within an organization, or placing an agent in charge of a transaction or situation." Restatement § 2.03 cmt. c.

90.     Defendant's telemarketers transferred customer information, including Plaintiff's contact information, directly to Defendant CHW. Thus, the telemarketer had the "ability . . . to enter consumer information into the seller's sales or customer systems," which the FCC has explained to show apparent agency. *Dish*, 28 FCC Rcd. at 6592 ¶ 46.

91.     Finally, the FCC has held that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-93 ¶ 46. Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 ¶ 46.

92.     Defendant is the liable party as the direct beneficiary of the illegal telemarketing as they stood to gain Plaintiff as a customer when telemarketers solicited Plaintiff for "home warranty" policy on their behalf.

## INJURY, HARM, DAMAGES, and ACTUAL DAMAGES
## AS A RESULT OF THE CALLS

93.     Defendant's calls harmed Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

94.     Defendant's calls harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

95.     Defendant's calls harmed Plaintiff by intruding upon Plaintiff's seclusion.

96.     Plaintiff has been harmed, injured, and damaged by the calls including, but not limited to: reduced device storage, reduced data plan usage, anger, frustration, invasion of privacy, and more frequent charging of Plaintiff's cell phone.

### Plaintiff's cell phone is a residential number

97.     The calls were to Plaintiff's cellular phone (407) 577-3823, which is Plaintiff's personal cell phones that he uses for personal, family, and household use. Plaintiff maintains no landline phones at his residence and has not done so for at least 15 years and primarily relies on cellular phones to communicate with friends and family. Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. Plaintiff further has his cell phone registered in his personal name, pays the cell phone from his personal accounts, and the phone is not primarily used for any business purpose.

### CAUSES OF ACTION:

### COUNT ONE:
### Violations of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by Automated Telemarketing Without Prior Express Written Consent

98.     Plaintiff re-alleges and re-adopts paragraphs 1 through 97 of the Complaint as if fully set forth herein.

99.     Defendant CHW and/or their affiliates or agents violated the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), at least seven (7) times by placing non-emergency telemarketing automated calls to Plaintiff's cellular telephone number using an automatic telephone dialing system without prior express written consent.

100.    Plaintiff was statutorily damaged at least seven (7) times under 47 U.S.C. § 227(b)(3)(B) by Defendant CHW by the calls described above, in the amount of $500.00 per call.

101.    Plaintiff was further statutorily damaged because Defendant CHW willfully or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount to $1,500.00 as permitted under U.S.C. § 227(b)(3)(C) for each and every willful and/or knowing violation.

102.    Plaintiff is also entitled to and does seek an injunction prohibiting Defendant CHW and their affiliates and agents from violating the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by placing non-emergency telemarketing automated text messages to any cellular telephone number using an ATDS without prior express written consent.

## COUNT TWO:

**(Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. 227(c), and 47 C.F.R. § 64.1200(C))**

103.    Plaintiff re-alleges and re-adopts paragraphs 1 through 97 of the Complaint as if fully set forth herein.

104.    Defendant CHW called Plaintiff's private residential telephone number which was successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days

18

prior to the calls for the purposes of commercial solicitation, in violation of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

**105.** Plaintiff was statutorily damaged at least eight (8) times under 47 U.S.C. § 227(c)(3)(F) by Defendant CHW by the telemarketing calls described above, in the amount of $500.00 per call.

**106.** Plaintiff was further statutorily damaged because Defendant CHW willfully and/ or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount as permitted under U.S.C. § 227(c)(5) for each and every willful and/or knowing violation.

**107.** Plaintiff is entitled to an award up to $1,500 in damages for each knowing or willful violation of 47 U.S.C. § 227(c)(3)(F).

## COUNT THREE

### (Violations of Florida Statutes § 501.059)

**108.** Plaintiff re-alleges and re-adopts paragraphs 1 through 97 of the Complaint as if fully set forth herein.

**109.** Defendant CHW and/or their affiliates authorized representatives to call Plaintiff using automated means and without Plaintiff's express written consent. Fla. Stat. § 501.059(8)(a).

**110.** Defendant did not have Plaintiff's prior express written consent when making the telephonic solicitation calls. Fla. Stat. § 501.059(1)(g).

**111.** Plaintiff is entitled to an award of at least $500 in damages for each such violation of Fla. Stat. § 501.059(8)a). Fla. Stat. § 501.059(10)(a)(2).

112.    Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation.  Fla. Stat. § 501.059(10)(a)(b).

## COUNT FOUR

### (Violations of Florida TELEMARKETING ACT)

113.    Plaintiff re-alleges and re-adopts paragraphs 1 through 97 of this Complaint as if fully set forth herein.

114.    Defendant CHW and/or their affiliates and authorized representatives called Plaintiff using automated dialing equipment that intentionally transmitted false caller identification information.  Fla. Stat. 501.616(7)(b).

115.    In addition to any other penalties or remedies provided under law, a person who is injured by a violation of the provisions of this part may bring a civil action for recovery of actual damages and/or penalties and/or punitive damages, including costs, court costs, attorney's fees. No provision of this part shall be construed to limit any right or remedy provided under law.  Fla. Stat. 501.625.

## COUNT FIVE

### (Violations of Florida Statutes § 934.03)

116.    Plaintiff re-alleges and re-adopts paragraphs 1 through 97 of the Complaint as if fully set forth herein.

117.    Defendant CHW and/or their affiliates authorized the recording and distribution of calls that transpired between the Plaintiff and Defendant CHW's telemarketers without his consent and/or prior knowledge. Fla Stat. § 934.03(1)(b).

118.    Defendant did not have Plaintiff's prior express written or verbal consent when recording the calls. Fla Stat. § 934.03(2)(a)(3)(d).

20

119.    Plaintiff is entitled to an award of at least $1,000 in damages for each such violation of Fla Stat. § 934.03(1)(b), pursuant to Fla. Stat. § 934.10(1)(b).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Joshua Cacho prays for judgment against Defendant as follows:

A.    Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B.    A declaration that actions complained of herein by Defendant violates the TCPA and Fla. Stat. 501.059 and Florida Telemarketing Act;

C.    An award of $1500 per call in statutory damages arising from the TCPA §227(b) intentional violations jointly and severally against the corporation for 7 calls.

D.    An award of $1500 per call in statutory damages arising from the TCPA §227(c) intentional violations jointly and severally against the corporations for 8 calls.

E.    An award of $1,000 per call in statutory damages for each such violation of Fla Stat. § 934.03(1)(b), pursuant to Fla. Stat. § 934.10(1)(b) for 7 calls.

F.    An award of $1,500 per call in statutory damages arising from 501.059(8)(a) intentional violations, pursuant to Fla. Stat. § 501.059(10)(a)(b) for 8 calls.

G.    An award of $50,000 in punitive damages arising from intentional violations of Fla. Stat. 501.616(7)(b).

H.    An award of $25,000 in punitive damages arising from intentional violations of Fla. Stat. 501.616(6)(b).

I.    An award of $5,000 in punitive damages arising from intentional violations of Fla Stat. § 934.03(1)(b), pursuant to Fla. Stat. § 934.10(1)(C).

21

J.      An award to Plaintiff of interest, costs and attorneys' fees, as allowed by law and equity.

K.      Such further relief as the Court deems necessary, just, and proper.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

January 31, 2023,                          Respectfully submitted,

Joshua Cacho
Plaintiff, Pro Se
164 Estella Road
Lake Mary, Florida 32746
407-577-3823